UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LENA VERN DANDRIDGE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 64-14801** |
| **JEFFERSON PARISH SCHOOL BOARD** | **SECTION "N"** |

### ORDER AND REASONS

Before the Court are the following two motions: (1) **Motion for Leave to Intervene to Modify One Paragraph in Proposed Consent Order Under F.R.C.P. Rule 24 by Jefferson Federation of Teachers (Rec. Doc. 128)**; and (2) **Motion to Intervene as Third-Party Plaintiff (Rec. Doc. 129)**. Oral argument was requested on both motions. Because the Court deems oral argument unnecessary, it **CANCELS** oral argument and rules as set forth herein.

### I.   BACKGROUND

This action was originally commenced on July 31, 1964. In the original Complaint (See Rec. Doc. 1, Docket sheet, entry 1), it was alleged that the Jefferson Parish School Board ("JPSB") and the Superintendent of Schools of Jefferson Parish maintained and operated a compulsory bi-racial school system in the parish and assigned students, teachers and other school personnel to the schools operated and controlled by them on the basis of race. Plaintiffs sought class certification and asserted discrimination by Defendants because of the compulsory bi-racial school system allegedly established by them. Plaintiffs also claimed that Defendants discriminated on the basis of race in the areas of school construction, formulation of budgets, disbursement of school funds, and

participation in extra curricular activities. Plaintiffs sought injunctive relief prohibiting the operation of a compulsory bi-racial school system in Jefferson Parish, as well as the alleged dual scheme or pattern of school zone lines and attendance area lines based on race or color, the assignments of pupils to public schools on the basis of race or color, the assignment of teachers, principals and other professional personnel to public schools on the basis of race and color, and the construction of elementary and high schools on the basis of dual attendance areas on the basis of race and color. Plaintiffs also sought to enjoin the Defendants from programing or supporting extra-curricular activities limited solely to one or the other of the races. Alternatively, Plaintiffs sought the entry of a decree directing Defendants to present a complete plan "in a period of time to be determined by this court" for the establishment of "a unitary, non-racial system which shall include a plan for the assignment of pupils, teachers, principals and other professional school personnel on a non-racial basis; the drawing of school zone or attendance area lines on a non-racial basis; the allotment of funds, the construction of schools, the approval of budgets on a non-racial basis and the elimination of any other discrimination in the operation of the school system or curricula which are based solely on race or color."

Pursuant to a June 22, 1965 Order (See Rec. Doc. 1, Docket sheet, entry 19), Defendants ultimately filed a plan providing for desegregation of the public school system on a unitary non-racial basis of operation, which was approved by the Court on June 26, 1969 (See Rec. Doc. 1, Docket sheet, entry 70). That plan was submitted and filed, but not recommended, by the JPSB on February 28, 1969, and was accepted by the court. (See Rec. Doc. 1, Docket sheet, entry 54).

On December 1, 1969, the United States Fifth Circuit Court of Appeals rendered its decision in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211, which set forth various guidelines for certain subject school districts, which did not then include the Parish of Jefferson, to

begin immediately to operate as unitary school systems within which no person is to be effectively excluded from any school because of race or color.    Subsequently, the JPSB submitted a follow-up plan on July 9, 1971.  (See Rec. Doc. 1, Docket sheet, entry 90).  This plan was submitted following the United States Supreme Court's decision in *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1 (1971).  The plan submitted by the JPSB, however, was not accepted, and Plaintiffs were granted further relief pursuant to *Swann*.  The United States Fifth Circuit, in its opinion entered on February 11, 1972, affirmed the decision of the District Court from which the JPSB had taken an appeal.  456 F.2d 552.  Thus, the plan entered in 1971, and amended on May 1, 1978 by Judge Charles Schwartz (See Rec. Doc. 1, Docket sheet, entry 115), remained in place until 2007.

On March 8, 2007, the Dandridge Plaintiffs and the JPSB filed a joint motion to supplement the desegregation plan, to specifically authorize the school district to utilize magnet school programs as a voluntary desegregation methodology.  (See Rec. Doc. 1, Docket sheet, entry 116).  That motion set forth requirements for the magnet school program in addition to authorizing magnet schools pursuant to the established consent order.  On March 8, 2007, Judge   Jay Zainey of this Court signed an Agreed Order, prepared by the Plaintiffs' attorney and the JPSB's attorneys.  (See Rec. Doc. 1, Docket sheet, entry 117).   In addition, Judge Zainey's Order directs the parties to, if possible, file a proposed plan in the form of a consent order, prepared through good faith efforts conducted in close cooperation, that when fully implemented by the school district will bring the remaining facets of the operations of the school system into compliance with the constitution.

On February 22, 2008, Plaintiffs and the JPSB Defendants filed a Joint Motion for Court Approval of Consent Order.  That motion is set for a fairness hearing on Friday, March 14, 2008 so that the undersigned may either approve or reject the Consent Order, based on its reasonableness, fairness, and adequacy. On March 10, 2008, four days before the scheduled fairness hearing, the

Court received two motions to intervene, which it now addresses.

## II.     THE MOTIONS TO INTERVENE

### A.     Motion for Leave to Intervene to Modify One Paragraph in Proposed Consent Order Under F.R.C.P. Rule 24 by Jefferson Federation of Teachers (Rec. Doc. 128)

In this motion, the Jefferson Federation of Teachers ("the Union") requests permission to intervene, pursuant to Rule 24(a)(2)[1], to seek the modification of one paragraph in the Consent Order that arguably affects a Collective Bargaining Agreement between the Union and the JPSB. In opposition, the parties jointly assert that no where in the Union's motion does it argue that the proposed Consent Order is inconsistent with federal law, would frustrate desegregation, or would fail to achieve the goals of a unitary school system. The parties also assert that the Union's motion to intervene is untimely.

### B.     Motion to Intervene as Third-Party Plaintiff (Rec. Doc. 129)

In this motion, Ronald and Nicole Elder, on behalf of their minor child, Aston Elder; and Shane and Angelle Granier, on behalf of their minor child, Matthew Granier (collectively, "the parent intervenors"), request permission to intervene in this case as of right, as third party plaintiffs, claiming that the proposed Consent Order will create inappropriate neighborhood districting discrimination, relative to the magnet school system in Jefferson Parish. Alternatively, the parent intervenors seek permissive intervention claiming that as parents of children attending magnet schools in Jefferson Parish who will be affected by the Proposed Consent Order, they have an interest in the outcome of this matter. In opposition, the parties jointly assert that no where in the

---

[1] The Union's motion incorrectly states that it is brought pursuant to Rule 24(a)(1) of the Federal Rules of Civil Procedure; however, a thorough reading of the motion reveals that the Union actually requests permission to intervene pursuant to Rule 24(a)(2), which involves a movant who claims an interest to the property or transaction that is the subject of the action.

motion of the parent intervenors is it argued that the proposed Consent Order is inconsistent with federal law, would frustrate desegregation, or would fail to achieve the goals of a unitary school system. The parties also assert that the motion to intervene by the parent intervenors is untimely.

### III.     LAW AND ANALYSIS

Rule 24(a) of the Federal Rules of Civil Procedure states that intervention of right shall be permitted upon timely application:

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). A party is entitled to intervene as of right if: 1) the motion to intervene is timely filed; 2) the potential intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which intervention is sought; 3) disposition of the case may impair or impede the potential intervenor's ability to protect its interest; and 4) the existing parties do not adequately represent the potential intervenor's interests. See Fed.R.Civ.P. 24(a); *Trans Chem. Ltd. v. China Nat'l Mach. Import and Export Corp.*, 332 F.3d 815, 822 (5th Cir.2003); *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir.2002).

The Fifth Circuit has explained that "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application ... [and] intervention of right must be measured by a practical rather than a technical yardstick." *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir.1991). However, failure to meet any one of the four requirements results in denial of the motion. See *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994). Because the motions to intervene of both the Union and the parent intervenors fail the timeliness requirement, the Court denies the requests to intervene.

The party who seeks to intervene must first timely move to do so. This is a discretionary determination for the district court. See *Smith Petroleum Serv., Inc. v. Monsanto Chem. Co.*, 420 F.2d 1103, 1115 (5th Cir.1970). To determine whether a motion to intervene is timely, the court may consider: 1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; 2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; 3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and 4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir.2001) (citing *Sierra Club*, 18 F.3d at 1205). The Fifth Circuit has explained that the timeliness requirement "is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994). "A motion to intervene's timeliness is to be determined from all the circumstances." *Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir.2001).

Here, this request for intervention has been made after the parties to this litigation have formulated a proposed Consent Order and only four days before this Court is charged with either adopting or rejecting this proposed Consent Order at a fairness hearing. The intervenors did not seek intervention when the matters placed at issue in this case were subject to adjudication, but rather claim their interest is based solely on the language of the proposed Consent Order. Because this case is in the settlement phase, has been the subject of long standing prior consent orders, and is not on the trial docket, this Court reasons that there is currently no case or controversy into which the movants can truly intervene, given the current posture. For this reason, both motions to

6

intervene are untimely.

As for the Union, their request to intervene regards one paragraph in the proposed Consent Order, to which it objects. Thus, instead of being a party to this intervention as of right, the Court views the Union as more of an interested entity that objects to the proposed Consent Order based on one single paragraph located therein. Further, the Union, perhaps even more so than the intervenor parents, knew of the negotiations between the parties and knew of the proposed Consent Order. Yet, the Union has offered no explanation as to why its request to intervene has come only four days before the fairness hearing, wherein this Court is charged with either adopting or rejecting the proposed Consent Order.

As for the motion of the parent intervenors, the Court finds it is untimely for the following additional reason. Specifically, the issue over which the parent intervenors complain (i.e., paragraph 5 of the proposed Consent Order) was addressed in Judge Zainey's <u>March 8, 2007</u> Order wherein he ordered:

> Consistent with the requirements of the grant through the Magnet Schools Assistance Program, admission to magnet schools funded through the Magnet Schools Assistance Program for students residing outside a magnet school's student attendance zone shall be limited in such a manner that such students residing on the east side of the Mississippi River shall be eligible for enrollment in magnet schools situated on the east side of the river and such students residing on the west side of the Mississippi River shall be eligible for enrollment in magnet schools on the west side of the river, such that the School District will not be under an obligation to provide transportation for magnet transfer students from one side of the Mississippi River to the other.

(See Rec. Doc. 1, Docket Sheet, entry 117). Thus, the parent intervenors (and, for that matter, the JPSB) should have been on notice in <u>early 2007</u> that provisions applicable to the division of the magnet school attendance zones were being discussed and negotiated. For those parents who had no reason to know of this case, the previously entered consent orders, and the current order being

7

negotiated by the parties, or for those parents who only recently became associated with the Jefferson Parish School System because of recent enrollment of a child or children therein, the Court finds that these parents were placed on notice (or should have been) when the proposed Consent Order at issue was placed on the JPSB's website for public inspection on February 12, 2008. However, even though parents could have sought intervention before the proposed Consent Order was finalized, the parent intervenors waited nearly one month <u>after</u> it was posted, and then only four days before the proposed fairness hearing, to bring their motion before the Court. Such request is untimely.

The parent intervenors also request permissive intervention, which is governed by Rule 24(b) and states in pertinent part:

> Upon **timely** application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common. [ ] In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b). As the Court explained above, the request of the parent intervenors in untimely and should be denied for that reason alone.

As for the extent of prejudice the Union and the parent intervenors would suffer if their motions are denied, the Court reminds both the Union and the parent intervenors that it is charged with considering the fairness of the proposed Consent Order at the March 14, 2008 fairness hearing. In doing so, the Court will consider the arguments made by the movants in their motions to intervene as well as the arguments made in the more than 60 letters the Court has received regarding the proposed Consent Order. Thus, the movants to these motions are not without recourse; their argument are being heard and considered fully by the Court. If, after considering all the arguments of the interested parties, the Court determines that the proposed Consent Order should be rejected

and the case is ultimately placed on the Court's trial docket, the Union and the parent intervenors may re-urge their motions to intervene at that time.

### IV.   CONCLUSION

**IT IS ORDERED** that the **Motion for Leave to Intervene to Modify One Paragraph in Proposed Consent Order Under F.R.C.P. Rule 24 by Jefferson Federation of Teachers (Rec. Doc. 128)** is hereby **DENIED without prejudice** to the right of the Union to re-urge this motion if this matter is later placed on the Court's trial docket.

**IT OS FURTHER ORDERED** that the **Motion to Intervene as Third-Party Plaintiff (Rec. Doc. 129)** is hereby **DENIED without prejudice** to the right of the parents to re-urge this motion if this matter is later placed on the Court's trial docket.

New Orleans, Louisiana, this 13th day of March, 2008.

_____
**KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE**

9